**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Merel Evans Bishop,                           Case No. 12-cv-135 (KMM/DTS)

     Plaintiff,

v.

Lori Swanson et al.,

     Defendants.

---

Joseph Goodwin,                               Case No. 12-cv-180 (KMM/DTS)

     Plaintiff,

v.

Lori Swanson et al.,

     Defendants.

---

William McRae,                                Case No. 12-cv-221 (KMM/DTS)

     Plaintiff,

v.

Lori Swanson et al.,

     Defendants.

---

William Mosby,                                Case No. 12-cv-320 (KMM/DTS)

       Plaintiff,

v.

Lori Swanson et al.,

     Defendants.

---

**ORDER AND REPORT AND RECOMMENDATION**

These matters' plaintiffs—Merel Evans Bishop, Joseph Goodwin, William McRae, and William Mosby—are individuals committed to the Minnesota Sex Offender Program (MSOP) in Moose Lake, Minnesota.  Over a decade ago, each filed a similar complaint challenging a wide range of MSOP practices and conditions.  These cases overlapped with the MSOP-related litigation in *Karsjens v. Piper*, No. 11-CV-3659, so judges in this District stayed these actions (alongside numerous other MSOP-participant actions).  With final judgment recently entered in *Karsjens*, Chief Judge Patrick J. Schiltz has lifted the stay in these matters—and because the complaints are so similar, he transferred them to a single set of judges.  The cases are thus now before this Court and ready for consideration.

More specifically, these cases are before the Court on the following filings:

- ***Bishop v. Swanson*, No. 12-CV-135 (D. Minn.):** Bishop's (1) "Complaint for Violations of Civil Rights Under Title 42 U.S.C. §1981, §1982, §1983, §1985, §1986, §1988," *Bishop* Docket No. 1; and (2) "Motion for Leave to Proceed In Forma Pauperis," *Bishop* Docket No. 2.

- ***Goodwin v. Swanson*, No. 12-CV-180 (D. Minn.):** Goodwin's (1) "Complaint for Violations of Civil Rights Under Title 42 U.S.C. §1981, §1982, §1983, §1985, §1986, §1988," *Goodwin* Docket No. 1; (2) "Motion for Leave to Proceed In Forma Pauperis," *Goodwin* Docket No. 2; and (3) "Request That The Court Not Dismiss The Action pursuant to Fed. R. Civ. P. 41(b) For Failure to Prosecute," *Goodwin* Docket No. 15.

- ***McRae v. Swanson*, No. 12-CV-221 (D. Minn.):** McRae's (1) "Complaint for Violations of Civil Rights Under Title 42 U.S.C. §1981, §1982, §1983, §1985, §1986, §1988," *McRae* Docket No. 1; (2) "Motion for Leave to Proceed In Forma Pauperis," *McRae* Docket No. 2; and (3) "Request That The Court Not Dismiss The Action pursuant to Fed. R. Civ. P. 41(b) For Failure to Prosecute," *McRae* Docket No. 17.

- ***Mosby v. Swanson*, No. 12-CV-320 (D. Minn.):** Mosby's (1) "Complaint for Violations of Civil Rights Under Title 42 U.S.C. §1981, §1982, §1983, §1985, §1986, §1988," *Mosby* Docket No. 1; and (2) "Motion for Leave to Proceed In Forma Pauperis," *Mosby* Docket No. 3.

For the following reasons, the Court grants the various IFP applications, as well as Goodwin's and McRae's requests that the Court not dismiss their actions for failure to

prosecute. Under 28 U.S.C. § 1915(e)(2), the Court further recommends dismissing in large part each of Plaintiffs' complaints (collectively, the "Complaints").

## FINDINGS OF FACT

### I.    Case History in Light of the *Karsjens* Litigation

These actions, of course, proceed in the shadow of the long-running, MSOP-related litigation in *Karsjens v. Piper*, No. 11-CV-3659 (DWF/TNL).[1] The Court will address that litigation as needed here, but will not systematically review it, instead assuming the parties' familiarity with that action.

This District received the original *Karsjens* complaint on December 21, 2011. *See Karsjens* Docket No. 1. That complaint had numerous named plaintiffs, but they did not include Bishop, Goodwin, McRae, or Mosby. *See id.* About two weeks later, the *Karsjens* plaintiffs moved to certify a class of all "civilly committed people" in Minnesota—for present purposes, all MSOP participants. *See Karsjens* Docket No. 24.

For the four cases at issue here, the Court received the relevant Complaint in January or February 2012. *See Bishop* Docket No. 1 at 1 (received January 17, 2012); *Goodwin* Docket No. 1 at 1 (January 23, 2012); *McRae* Docket No. 1 at 1 (January 25, 2012); *Mosby* Docket No. 1 at 1 (February 7, 2012). Each plaintiff applied to proceed *in forma pauperis* (IFP), submitting the application alongside his Complaint. *See Bishop* Docket No. 2; *Goodwin* Docket No. 2; *McRae* Docket No. 2; *Mosby* Docket No. 3.

On January 25, 2012, Judge Michael J. Davis—then this District's chief judge—entered an order in numerous MSOP-client cases, including *Bishop* and *Goodwin*. *See Bishop* Docket

---

[1] Judge Donovan W. Frank entered the final judgment in *Karsjens* on February 24, 2022. *See Karsjens* Docket No. 1199. The *Karsjens* plaintiffs have appealed to the U.S. Court of Appeals for the Eighth Circuit: briefing appears to be complete, and the Eighth Circuit is in the process of scheduling an oral-argument date. *See* Docket, *Karsjens v. Harpstead*, No. 22-1459 (8th Cir.).

No. 8; *Goodwin* Docket No. 5.  Given the class-certification motion in *Karsjens*—and *Karsjens*'s

wide scope—Judge Davis stayed essentially "[a]ll current and future cases brought by an indi-

vidual or group of individuals who has or have been civilly committed to [MSOP]."  *Bishop*

Docket No. 8 at 11.  The order stayed the affected cases "in all respects . . . pending resolution"

of the *Karsjens* class-certification motion.  *Id.*

This order specifically stayed both *Bishop* and *Goodwin*.  *See id.* at 9–10.  For their part,

McRae's and Mosby's Complaints arrived on or after that order's date.  *See McRae* Docket;

*Mosby* Docket.  The order's scope covered both cases, however, so stay orders were quickly

entered in both dockets.  *See McRae* Docket No. 6; *Mosby* Docket No. 7.  Over the next dec-

ade, this District's courts continued to stay numerous MSOP-related cases as *Karsjens* pro-

ceeded; the four cases here followed course.  *See Bishop* Docket Nos. 9–13;[2] *see also Good-

win* Docket; *McRae* Docket; *Mosby* Docket (showing similar filings).

On February 24, 2022, Judge Frank entered the final judgment in *Karsjens*.  *See* note 1

*supra*.  In June 2022, judges overseeing stayed MSOP cases—including the four at issue

here—entered orders indicating that "[b]ecause the claims presented in *Karsjens* have now

been resolved," courts would soon be lifting the imposed stays.  *See, e.g.*, *Bishop* Docket

No. 16 at 1.  The orders gave each plaintiff 60 days to notify the Court whether he intended to

keep prosecuting his action.  *See id.*  Bishop, Goodwin, McRae, and Mosby (among other

MSOP-client litigants) all indicated that they planned to proceed.  *See Bishop* Docket No. 17;

*Goodwin* Docket No. 15; *McRae* Docket No. 17; *Mosby* Docket No. 17.[3]

---

[2] While the early stay orders hinged on *Karsjens*'s class-certification motion, later orders ex-
tended the stay to "resolution of the *Karsjens* litigation" more broadly.  *See, e.g.*, *Bishop* Docket
No. 10 at 20–21.  (Judge Frank entered an order certifying a class in *Karsjens* in July 2012.
*See, e.g.*, *Karsjens* Docket No. 203.)
[3] As noted above, Goodwin and McRae filed notices that affirmatively ask the Court not to
dismiss their actions for failure to prosecute.  The Court grants these motions.

On October 3, 2022, Chief Judge Schiltz entered an order lifting the *Karsjens*-based stay of MSOP cases.  *See, e.g.*, *Bishop* Docket No. 18.  Because of similarities between the *Bishop*, *Goodwin*, *McRae*, and *Mosby* complaints (on which, see below), Chief Judge Schiltz entered a second order a few days later that led to all four cases being assigned to Judge Katherine M. Menendez and this Court.  *See, e.g.*, *Bishop* Docket No. 19 at 7–8.

## II.    The Pending Complaints

Chief Judge Schiltz's second October 2022 order deemed *Bishop*, *Goodwin*, *McRae*, and *Mosby* "related."  *Id.* at 8.  Before proceeding to analysis, it is worth noting the Complaints' similarities—because of them, whatever analysis applies to one of these cases by and large governs the others.

As noted above, the four Complaints were all filed in a three-week period early in 2012.  In addition to sharing the exact same title (right down to arguable typographical errors), each Complaint is between 121 and 126 pages long, features one plaintiff, and purports to sue just over three dozen defendants—though each complaint has a slightly different list.  *Compare Bishop* Docket No. 1 with *Goodwin* Docket No. 1; *McRae* Docket No. 1; *Mosby* Docket No. 1.

Even these differences in defendants, however, reinforce the complaints' overall similarity.  In each case, the various defendants each fit into certain "slots" (for lack of a better word), and what differences appear are because the different complaints sometimes put different people or entities into those slots.  For instance, *Bishop* and *Goodwin* differ only in one defendant: Bishop names "Olmsted County Social Services John Doe," while Goodwin names "Clearwater County Social Services Sandy Nelson."  *Compare Bishop* Docket No. 1 at 1 *with Goodwin* Docket No. 1 at 1.  As the complaints proceed, however, the discussions of these parallel defendants essentially match.  *Compare Bishop* Docket No. 1 at 30–31 (discussing Doe) *with Goodwin* Docket No. 1 at 31 (discussing Nelson).

The *Bishop* and *McRae* complaints differ in only two defendants, and here again, the parallel defendants occupy the same roles. *Compare Bishop* Docket No. 1 at 1, 17, 30–31 (naming and discussing "Dr. Barney" and previously mentioned Doe) *with McRae* Docket No. 1 at 1, 17, 31 (naming and discussing Vickie Aldridge and "Hennepin County Social Services James O'Keefe" in parallel roles). The *Bishop* and *Mosby* complaints differ more—indeed, *Mosby* adds an entirely new defendant, "Hector Ortiz"—but here too the overall similarity is obvious. *Compare Bishop* Docket No. 1 at 1, 13–17, 22–23, 27, 30–31 (naming and discussing Jane Stinar, Mike Anderson, Kent Johanason, "Dr. Barney," Anita Moonen, Jennifer Abson, and "Olmsted County Social Services John Doe") *with Mosby* Docket No. 1 at 1, 13–17, 22–23, 27, 30–31 (naming and discussing Linda Anderson, James Martinez, Edward Kesty, Vickie Aldridge, Dominique Wilson, Debbie James, and "Hennepin County Social Services James O'Keefe" in parallel spots).

Unsurprisingly, given the Complaints' close resemblance, they feature essentially similar lists of 22 causes of action (COAs). *See Bishop* Docket No. 1 at 104–18; *Goodwin* Docket No. 1 at 104–19; *McRae* Docket No. 1 at 104–16; *Mosby* Docket No. 1 at 104–16. Their lengthy, 19-point prayers for relief are also basically identical. *See Bishop* Docket No. 1 at 118–21; *Goodwin* Docket No. 1 at 117–20; *McRae* Docket No. 1 at 116–19; *Mosby* Docket No. 1 at 116–119.

While it this Court's usual practice to briefly summarize a complaint's allegations before diving into legal analysis, here the Complaints' length and the number of causes of action recommend a different approach. The Court will therefore discuss the Complaints' allegations as part of addressing the Complaints' COAs—in turn, and in order—in the analysis section below.

## CONCLUSIONS OF LAW

### I.   Standards of Review

As noted above, none of the Plaintiffs paid a filing fee; instead, each submitted a motion to proceed IFP.  *See Bishop* IFP Appl.; *Goodwin* IFP Appl.; *McRae* IFP Appl.; *Mosby* IFP Appl. Each of these IFP applications show that Plaintiffs are financially eligible to proceed IFP here. The Court thus grants each of the IFP Applications.

Under the statute governing federal-court IFP proceedings, a court can dismiss "[a] case" proceeding IFP "at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  While the statute refers to dismissals of a "case," courts in this District have repeatedly used § 1915(e)(2) to dismiss portions of cases as well.  *See, e.g.*, *Mendez v. Kallis*, No. 21-CV-1147 (PJS/BRT), 2021 WL 3476681, at *2 (D. Minn. May 27, 2021) (citing case), *report and recommendation adopted in relevant part*, 2021 WL 2911171 (D. Minn. July 12, 2021), *aff'd*, No. 21-2667, 2021 WL 6689158 (8th Cir. Aug. 16, 2021); *Prouty v. Dep't of Hum. Servs.*, No. 20-CV-928 (WMW/DTS), 2020 WL 6888103, at *2 (D. Minn. Oct. 20, 2020), *report and recommendation adopted*, 2020 WL 6875423 (D. Minn. Nov. 23, 2020).

To assess whether a complaint states a claim, the Court assumes that the complaint's allegations are true and makes all reasonable plaintiff-favoring inferences based on them.  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citing cases).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  A district-court determination of whether a plaintiff meets this

standard is "context-specific"; a court must "draw on its judicial experience and common sense." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)). Although the Court construes *pro se* complaints liberally, *pro se* litigants must still allege "sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## II.    Section 1983 Official-Capacity Claims for Damages

Plaintiffs purport to sue Defendants in their individual capacities and in their "official capacities"—mainly, employees of various Minnesota agencies.[4]  *See Bishop* Docket No. 1 at 1. Setting aside agency references, the Court construes Plaintiffs' official-capacity claims as simply claims against these Defendants in their official capacities with the State of Minnesota. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted); *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (making same point (citing *Will*)).

To be clear, Plaintiffs' cause-of-action lists generally seem to distinguish between some causes of action aimed at Defendants in their individual capacities and others aimed at Defendants in their official capacities. *Compare Bishop* Docket No. 1 at 105 *with id.* at 114. But some causes of action leave the capacity designation unclear. *See, e.g., id.* at 114–15. For clarity, the Court assumes—construing the Complaints liberally—that all of Plaintiffs' causes of action target all Defendants in both their individual and official capacities.[5]

---

[4] Each Complaint features as a Defendant one county-government employee as well; the Court will address claims against that individual in a separate section below.

[5] To the extent this leads to the Court recommending dismissal of claims that Plaintiffs never meant to make, the Court certainly does no harm.

Under this construction, Plaintiffs' Complaints lodge various damages claims against Defendants in their official capacities with the State of Minnesota. Eleventh Amendment sovereign immunity cuts this off. The U.S. Constitution's Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The wording here is "another State," but it is black-letter law that unconsenting States are also immune from their own citizens' federal suits. *See, e.g.*, *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)); *Lors v. Dean*, 746 F.3d 857, 862 (8th Cir. 2014) (same). The issue is jurisdictional: the Eleventh Amendment generally deprives federal courts of subject-matter jurisdiction over claims against an unconsenting state. *See, e.g.*, *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)); *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 473 (8th Cir. 2018) (citing cases).

Nothing in the Complaints suggests that the State of Minnesota has consented to suits like Plaintiffs'. Indeed, the U.S. Supreme Court has made clear that suits under 42 U.S.C. § 1983—like Plaintiffs'—do not elude Eleventh Amendment sovereign immunity. *See Sossaman*, 563 U.S. at 284–85, 291–92; *see also, e.g.*, *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) ("[C]learly Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become [§] 1983." (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

The Court therefore recommends dismissing without prejudice—for lack of jurisdiction—any damages claims by Plaintiffs against any state-employed Defendants in their official capacities.[6]

---

[6] Under *Ex parte Young*, federal courts do have jurisdiction over official-capacity claims against state officials if the claims seek prospective injunctive relief (as opposed to damages). 209 U.S. 123 (1908); *see also Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 357 (8th Cir. 2020) (citing *Ex parte Young*). Plaintiffs indeed seek various forms of prospective injunctive relief

## III.    Section 1983 Individual-Capacity Claims for Damages

The remaining § 1983 damages claims are simply against the various Defendants in their individual capacities.  The Court concludes, however, that thoroughgoing pleading failures dictate those claims' dismissal as well.

Cursory review of the Complaints' substantive allegations shows that Plaintiffs make almost no effort to link particular Defendants to particular conduct.  Instead, Plaintiffs routinely assert that *every* Defendant engaged in *every* sort of alleged problematic conduct.  Take, for instance, two paragraphs from one of the Complaints' "Treatment" section:

> 56.    Defendants, including specifically, Lori Swanson, Governor Dayton, Dennis Benson, Lucinda Jesson, Cal Ludeman, Greg Carlson, Kevin Moser, Janine Hebert, Tom Lundquist, Elizabeth Barbo, Tara Osborne, Steve Sayavitz, Jane Stinar, Mike Anderson, Terry Kneisel, Sara Kulas, Kent Johanason, Dr. Barney, Robert Rose, Blake Carey, Ron Fischer, Steve Sadjek, Kelli Minor, Scott Benoit, Anita Moonen, William Gullickson, Tim Gore, Ann Zimmerman, Eric Skon, Julianna Beavens, Jennifer Abson, Sue Johnson, Barry Anderson, Nate Johnson, Laurie Severson, and Olmsted County Social Services John Doe, are responsible for providing treatment to [Plaintiff].

> 57.    From June 2003 until January 2012, during the period [Plaintiff] was detained involuntarily at MSOP, defendants, including specifically Lori Swanson, Governor Dayton, Dennis Benson, Lucinda Jesson, Cal Ludeman, Greg Carlson, Kevin Moser, Janine Hebert, Tom Lundquist, Elizabeth Barbo, Tara Osborne, Steve Sayavitz, Jane Stinar, Mike Anderson, Terry Kneisel, Sara Kulas, Kent Johanason, Dr. Barney, Robert Rose, Blake Carey, Ron Fischer, Steve Sadjek, Kelli Minor, Scott Benoit, Anita Moonen, William Gullickson, Tim Gore, Ann Zimmerman, Eric Skon, Julianna Beavens, Jennifer Abson, Sue Johnson, Barry Anderson, Nate Johnson, Laurie Severson, and Olmsted County Social Services John Doe, neither provided nor offered [Plaintiff] any treatment of any kind.  It is upon information and belief that the treatment offered is nothing more than a sham.

---

within their Complaints, *see, e.g.*, *Bishop* Docket No. 1 at 117–19, and the text discussion here does not implicate this Court's jurisdiction over those relief requests.

*Bishop* Docket No. 1 at 33–34. Such indiscriminate listing of every Defendant—often preceded, ironically, by "including specifically"—continues throughout the Complaints' substantive allegations and into almost all of the specific COAs. *See id.* at 32–104 (substantive allegations); *id.* at 104–16 (substantive allegations). The Complaints thus allege flatly implausible things. For instance, under the Complaints' allegations, Governor Mark Dayton himself *personally* denied Plaintiffs' requests for a computer (*id.* at 77), heard (but ignored) Plaintiffs' complaints about phone-call monitoring (*id.* at 80); and limited Plaintiffs' time in MSOP's "big yard" (*id.* at 82).

These blunderbuss litanies create numerous problems. First, because of them, the Complaints almost certainly violate Federal Rule of Civil Procedure 11(b)(3), under which one who signs a pleading "certifies to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . . ."[7] Second, it is hard to say that pleadings like this give any Defendants proper notice of what they might actually be liable for. (What, for example, is Governor Dayton supposed to make of the Complaints as presently pleaded?)

Most importantly, however, these shotgun-style allegations cannot support § 1983 claims against the individual Defendants. "An official may be held liable under § 1983 only if the official, 'through [his or her] own individual actions, has violated the Constitution.'" *Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 687–88 (8th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). One implication is that "'[l]iability under [§] 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.'" *Id.* at 688 (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)). Under the federal

---

[7] Rule 11(b)(3) lets a party assert factual contentions that presently lack evidentiary support, as long as one specifically identifies the relevant contentions and certifies that one " will likely have evidentiary support [for them] after a reasonable opportunity for further investigation or discovery." But the Complaints here identify no such carveouts.

pleading standards noted above, a plaintiff must allege this direct responsibility with plausibility. Allegations like Plaintiffs' here purport to assign direct responsibility to all Defendants for all conduct, but in this Court's view, the complete lack of clarity here means that Court cannot know which (if any) responsibility assignments are plausible.

The Court therefore recommends dismissing all § 1983 individual-capacity claims for damages in Plaintiffs' suits. Under the Court's recommendations concerning the Complaints' § 1983 damages claims, what § 1983 claims remain are only official-capacity claims seeking prospective injunctive relief.[8]

## IV.    State Constitutional-Law Claims

Several of Plaintiffs' COAs—specifically, COAs 1–8, 13, and 20—purport to bring claims under the Minnesota Constitution. This effort fails. Numerous decisions explain that the Minnesota Constitution generally does not provide private rights of actions. *See, e.g.*, *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 941 (8th Cir. 2016) (quoting and citing cases); *Hummel v. Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 594 (D. Minn. 2020) (quoting *Eggenberger*); *Ivey v. Johnston*, No. 18-CV-1429 (PAM/DTS), 2019 WL 3334346, at *3 (D. Minn. July 24, 2019) (same), *report and recommendation adopted*, 2019 WL 3987583 (D. Minn. Aug. 23, 2019). The Court therefore recommends dismissing COAs 1–8, 13, and 20 with prejudice to the extent that they assert claims based on the Minnesota Constitution.

---

[8] Because all of these official-capacity claims against state defendants are effectively claims against the State of Minnesota, the Complaints' practice of repeatedly naming all the individual Defendants is less of a problem for the official-capacity claims. Simply put, while any given particular Defendant might not be responsible for a given problematic MSOP policy or condition, it is far more plausible that the State of Minnesota, writ large, is suitably responsible. As discussed below, however, for many of the Complaints COAs, other pleading problems doom many of the official-capacity § 1983 claims.

## V.    Causes of Action

Having addressed various Complaint-wide problems, the Court will now address (in order) what remains of the Complaints' various causes of action.

### A.    COA 1—"Failure to Provide Treatment"

The Complaints' first COA asserts a "failure to provide treatment."  *See, e.g.*, *Bishop* Docket No. 1 at 104.[9]  Plaintiffs claim here that given the Complaints' allegations, Defendants' conduct "constitute[s] an unreasonable and unwarranted failure to provide [Plaintiffs] the best available and most qualified treatment"; as relevant here, Plaintiffs contend that this violated various provisions of the U.S. Constitution and the Minnesota Civil Commitment and Treatment Act ("MCCTA"), Minn. Stat. §§ 253b.01–24.  *Id.*  As with every COA (save one, to be discussed below), Plaintiffs draw no distinctions about which Defendants COA 1 targets—Plaintiff purport to bring COA 1 against all Defendants.  *See id.* at 104–15.

COA 1 cannot proceed, for a reason that will recur throughout this analysis.  Simply put, *Karsjens* tested—and resolved—COA 1, so Plaintiffs here cannot bring it again here.

As relevant here, the *Karsjens* plaintiffs filed their Third Amended Complaint in October 2014.  Count III of that complaint asserted a "failure to provide treatment" in violation of the U.S. Constitution's Fourteenth Amendment; Count IV argued that the *Karsjens* defendants "fail[ed] to provide treatment" in violation of the MCCTA.  *See Karsjens* Docket No. 635 at 66–70.  After the *Karsjens* bench trial in February/March 2015, the *Karsjens* plaintiffs moved to dismiss Count IV without prejudice; the *Karsjens* defendants asked (among other things) for a with-prejudice dismissal.  *See Karsjens* Docket; *Karsjens* Docket Nos. 925–26, 941.  In August 2015, Judge Frank dismissed Count IV with prejudice.  *See Karsjens* Docket No. 1005 at 2; *see also, e.g.*, *Karsjens v. Lourey*, 988 F.3d 1047, 1050 n.2 (8th Cir. 2021) (noting dismissal

---

[9] In what follows, given the above discussion of how similar the four complaints are here, the Court will simply refer to the *Bishop* complaint and treat it as representative of the others.

with prejudice). As for *Karsjens*'s Count III, Judge Frank dismissed that claim with prejudice in August 2018, and the Eighth Circuit affirmed that determination. *See Karsjens* Docket No. 1108 at 42; *Karsjens*, 988 F.3d at 1049–50 (discussing relevant history and concluding that Judge Frank "properly dismissed Count 3").

The overlap between Plaintiffs' COA 1 and *Karsjens*'s Counts III and IV raises the issue of claim preclusion.[10] Under this doctrine, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)); *see also, e.g.*, *Daredevil, Inc. v. ZTE Corp.*, 1 F.4th 622, 627 (8th Cir. 2021) (quoting *Taylor*). The Eighth Circuit uses a five-element test to analyze claim preclusion—specifically, claim preclusion applies when:

> (1) [a] first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); (4) both suits are based upon the same claims or causes of action; and (5) the party against whom [claim preclusion] is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

---

[10] Courts sometimes use differing terminology to refer to this issue, as the U.S. Supreme Court has explained:

> The terms res judicata and claim preclusion often are used interchangeably. But res judicata "comprises two distinct doctrines." The first is issue preclusion, also known as collateral estoppel. It precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment. The second doctrine is claim preclusion, sometimes itself called res judicata. Claim preclusion prevents parties from relitigating the same claim or cause of action, even if certain issues were not litigated in the prior action.

*Brownback v. King*, 141 S. Ct. 740, 747 n.3 (2021) (citations omitted; cleaned up).

*United States v. Bala*, 948 F.3d 948, 950 (8th Cir. 2020) (quoting *Rutherford v. Kessel*, 560 F.3d 874, 877 (8th Cir. 2009)); *see also, e.g.*, *ResCap Liquidating Tr. v. LendingTree, LLC*, No. 19-CV-2360 (SRN/HB), 2020 WL 1317719, at *22 (D. Minn. Mar. 20, 2020) (quoting *Bala*).

All five elements exist here for COA 1. *Karsjens* has culminated in a final judgment on the merits, and that case features no plausible jurisdictional question. The Plaintiffs here were *Karsjens* parties, as the *Karsjens* class included "[a]ll patients currently civilly committed in [MSOP] pursuant to Minn. Stat. § 253B"; all four Plaintiffs here qualify. *See Karsjens* Docket No. 203 at 11. And the *Karsjens* record belies any suggestion that the parties there lacked a "full and fair opportunity to litigate."

This leaves the fourth claim-preclusion element: as relevant here, the question is whether Plaintiffs' failure-to-provide-treatment claims duplicate *Karsjens*'s. They do—comparing the *Karsjens* Third Amended Complaint with the Complaints here makes this plain. *Compare, e.g.*, *Karsjens* Docket No. 635 at 17–35, 64–67 *with Bishop* Docket No. 1 at 32–37, 104–05. In both cases, the failure-to-provide-treatment claim is that MSOP inappropriately fails to give appropriate treatment to MSOP-committed individuals. *Karsjens* tested those claims and the defendants there prevailed, so claim preclusion bars Plaintiffs' attempt here. The Court thus recommends dismissal of COA 1 with prejudice.

## B.    COA 2—"Unreasonable Searches and Seizures"

COA 2 proposes that Defendants have infringed on Plaintiffs' "right to be free from unreasonable searches and seizures," in violation of the Fourth and Fifth Amendments.[11]  *See*

---

[11] As a threshold point for COA 2, the Court observes that traditional search-and-seizure analysis is a Fourth Amendment issue, not a Fifth Amendment concern. The Fifth Amendment has a Due Process Clause, of course, dictating that one's property cannot be taken "without due process of law." But the Fifth Amendment's Due Process Clause is a prohibition on the national government, not state governments. To the extent that the Fourteenth Amendment's Due Process Clause bears on due process, Plaintiffs' due-process claims are addressed elsewhere in this Order and Report and Recommendation.

*Bishop* Docket No. 1 at 105.  The Complaints list a variety of allegedly violative conduct; in the

Court's view, the key allegations are these:

- Plaintiffs allege that an MSOP policy permits the routine "search" of Plaintiffs' "incoming as well as outgoing mail."  *Id.* at 58.

- Plaintiffs allege being strip-searched and/or shackled "before and after transports" and after "any visitation."  *Id.* at 58, 62, 72–73.

- Plaintiffs allege an MSOP "policy and practice of conducting random, unreasonable and unwarranted searches of [each Plaintiff's] quarters, property and person."  *Id.* at 58, 73–75.

- Plaintiffs allege a "policy and practice of monitoring" phone calls, including phone calls to attorneys.  *Id.* at 59, 78–80.

- Plaintiffs allege a "policy and practice of allowing staff to shakedown [Plaintiffs'] room[s] at any time."  *Id.* at 60, 73–75.

- Plaintiffs allege that MSOP policies lead to a "tremendous amount of property loss and denial [of] basic essentials."  *Id.* at 76.  For personal property allegedly seized, Plaintiffs allege the loss of "personal sheets, towels and blankets."  *Id.*

COA 2 largely runs right into the same claim-preclusion issue that crippled COA 1.

Count X of the *Karsjens* Third Amended Complaint contained a cause of action specifically

addressing "unreasonable searches and seizures," which listed as problematic conduct "random cell checks," "strip searches," and "random pat downs."  *See Karsjens* Docket No. 635 at

78–79; *see also id.* at 45 (presenting list of allegedly unreasonable search-related practices,

including review of mail and call monitoring).  Judge Frank granted the *Karsjens* defendants

summary judgment on this claim in August 2018:

> The Court determines that Defendants are entitled to summary judgment on Plaintiffs' classwide challenge to the MSOP's policies implicating the Fourth Amendment.  The record lacks "substantial evidence showing [that MSOP's] policies are an unnecessary or unjustified response to problems of institutional security," and the Court is thus bound to defer to Defendants' institutional judgment regarding the need for particular search policies.  Furthermore, caselaw has consistently affirmed the constitutionality of various search policies at the MSOP, and the Rule 706 Expert testimony suggests that the policies are reasonable for a sex offender civil

> commitment facility.  The Court concludes that the record fails to support Plaintiffs' classwide challenge alleging that the punitive nature of the MSOP renders its search and seizure policies unconstitutional under the Fourth Amendment.  Therefore, the Court grants summary judgment to Defendants on Count X.

*Karsjens*, 336 F. Supp. 3d 974, 996 (D. Minn. 2018) (citation omitted).  Plaintiffs appealed other parts of this order, but not the Count X dismissal.  *See Karsjens* Docket No. 1118 at 2.

Given the *Karsjens* outcome on Count X, the Court concludes that Plaintiffs' unreasonable-search-and-seizure claim should be almost entirely dismissed as a result of claim preclusion.  The only aspects of COA 2 that survive are Plaintiffs claims of MSOP policies causing (1) impermissible monitoring of Plaintiffs' calls with their attorneys, and (2) actual property loss. *See Bishop* Docket No. 1 at 58, 79–80 (containing allegations about lawyer-call monitoring); *id.* at 58, 76 (containing allegations about personal-property seizures).

### C.    COA 3—"Invasion of Privacy"

COA 3 asserts that Defendants' conduct "constitute[s] [an] unreasonable and gross invasion of [Plaintiffs'] privacy," violating the Fourth Amendment.  *Bishop* Docket No. 1 at 105 (emphasis removed).  The Complaints' only specific substantive "privacy" allegations appear in discussions of phone-call monitoring, *id.* at 78–80, but reading the Complaints liberally, the Court assumes that Plaintiffs generally view all of the conduct grounding COA 2 as also grounding COA 3.

This hints at another preclusion issue, because privacy invasions were plainly a *Karsjens* concern.  For instance, that action's Third Amended Complaint asserted that the *Karsjens* defendants "invaded the privacy of Plaintiffs and Class members in violation of clearly established rights under the Fourth Amendment to the United States Constitution . . . ." *Karsjens* Docket No. 635 at 7; *see also id.* at 2 (claiming *Karsjens* plaintiffs have right to "be free from an invasion of privacy").  But the *Karsjens* complaints never contained a specific

privacy-invasion claim. *See*, *e.g.*, *id.* at 59–84. Claim preclusion of the sort discussed above thus does not obviously apply to COA 3.[12]

The Court nevertheless concludes that *Karsjens* still disposes of most of COA 3, even if not through claim preclusion. Simply put, the Court fails to see how the Fourth Amendment could possibly support an invasion-of-privacy claim where it does not support an unreasonable-search-or-seizure claim. The Court thus concludes that, given the COA 2 discussion above, only one aspect of Plaintiffs' complaints here could possibly state a privacy-invasion claim for COA 3: the legal-call-monitoring claim.[13] For purposes of Fourth Amendment consideration, then, the Court recommends dismissing all of COA 3 except for the claim that Defendants' alleged monitoring of legal calls violated Plaintiffs' privacy rights.

### D. COA 4—"Denial of Access to Legal Materials and Counsel"

COA 4 suggests that Defendants' conduct caused "deprivations of [Plaintiffs'] constitutional right to legal materials and right to counsel," violating the First, Fourth, Fifth, and Sixth Amendments. *Bishop* Docket No. 1 at 106 (emphasis removed). Key allegations here include claims that MSOP clients have limited access to a law library (allegedly, less access than "prisoners receive in prison"), and that Defendants have implemented a policy that lets Defendants "block [Plaintiffs'] legal file folders" as part of Plaintiffs' "computer access." *Id.* at 69–70. This has little to do with any denials of counsel, so the Court construes the claim as focusing on an alleged denial of legal-material access.

---

[12] True, claim preclusion can bar not just claims that were actually brought in a prior suit, but also claims that "could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). For § 1915–screening purposes, this Court will not decide whether, for preclusion purposes, particular claims could have been—but were not—raised in *Karsjens*. This is without prejudice, of course, to Defendants raising such an argument when they respond to what remains of Plaintiffs' complaints.

[13] The Court's discussion of COA 2 also allowed through certain property-seizure claims, but whatever issues those claims raise (e.g., due-process claims based on improper preseizure procedures) are distinct from the sort of privacy-related issues relevant to COA 3.

In *Bounds v. Smith*, the U.S. Supreme Court recognized a "fundamental constitutional right of access to the courts [that] requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). (*Bounds* refers to prisoners, but the access right also applies to civilly committed individuals. *See, e.g.*, *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012).) The Court later clarified that one cannot state a denial-of-access claim "simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 352 (1996). Instead, "the inmate . . . must go one step further and demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id.*; *see also, e.g.*, *Beaulieu*, 690 F.3d at 1047 (quoting *Lewis*); *Bakambia v. Schnell*, No. 20-CV-1434 (NEB/DTS), 2022 WL 4533798, at *3 (D. Minn. Sept. 28, 2022) (quoting *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007)).

The Complaints lack any discussion of how problems with legal-material access at MSOP affected any particular legal actions. *See, e.g.*, *Bishop* Docket No. 1 at 69–72 (presenting denial-of-access allegations). Plaintiffs therefore fail to state a denial-of-legal-access claim. The Court thus recommends dismissing COA 4 without prejudice for failure to state a claim.

### E.    COA 5—"Denial of Liberty in Violation of the 5th and 14th Amendment[s] of the U.S. Constitution and 42 U.S.C. § 1983"

COA 5 asserts that Defendants deprived Plaintiffs of their "constitutional right to liberty," violating the Fifth and Fourteenth Amendments. *Id.* at 107. COA 5 itself provides little discussion of just what liberty Plaintiffs mean here, though the Complaints' other allegations contain various references to "liberty" and/or "liberty interests." *See, e.g.*, *id.* at 2–3, 91–93, 99.

In the Court's view, Plaintiffs' liberty discussion is a way to assert procedural-due-process violations. After all, the Fifth and Fourteenth Amendments' liberty references place the

19

term in a due-process context.  *See* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law[.]); *id.* amend. XIV, § 1 ("No State . . . shall . . . deprive any person of life, liberty, or property, without due process of law[.]").  Furthermore, as discussed more below, one element of a procedural-due-process violation is "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property[.]'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citing cases); *see also, e.g.*, *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004) (quoting *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000)).

The Complaints here already have a COA that more specifically presents a due-process claim: COA 9 purports to allege a "denial of due process."  *Bishop* Docket No. 1 at 109.  This makes COA 5 duplicative.  A court has the discretion to dismiss duplicative claims.  *See, e.g.*, *Bishop v. St. Jude Med. S.C., Inc.*, No. 19-CV-0420, 2020 WL 4352682, at *11 (D. Minn. July 29, 2020) (quoting *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 878 (D. Minn. 2012)).  The Court therefore recommends dismissing COA 5 without prejudice; it will address Plaintiffs' due-process claims when assessing COA 9.

### F.     COA 6—"Denial of Less Restrictive Alternative"

COA 6 states that Defendants have violated Plaintiffs' "constitutional right to a less restrictive alternative placement," purportedly based on the First, Fifth, and Fourteenth Amendments.  *See Bishop* Docket No. 1 at 107.  Claim-preclusion concerns squarely dispose of this COA.

Count VI of the *Karsjens* Third Amended Complaint asserted that the defendants there violated MSOP clients' rights by failing to provide a "less restrictive alternative confinement," directly raising the claim that "MSOP, as implemented, does not provide a less restrictive alternative to confinement at a MSOP secure facility."  *Karsjens* Docket No. 635 at 71.  Judge Frank's February 2022 order dismissed Count VI with prejudice:

> As discussed above and incorporated by reference here, the Court dismisses Count VI with prejudice because: (1) the Court cannot conclude that Plaintiffs' claims in Count VI are distinct from those already considered and rejected in Counts I and II and is therefore properly barred by [the Eighth Circuit's first *Karsjens* decision]; and (2) even if this Court were to consider Count VI . . . , it would still find that Plaintiffs' claims fail[] because: (a) Plaintiffs do not have a right to the least restrictive environment; (b) Defendants offer a continuum of facilities and residences to the MSOP Clients; (c) there is no evidence that the continuum of facilities Defendants offer is punitive; (d) placement in any specific facility is neither arbitrary or purposeless; and (e) finding no constitutional violation, the Court must defer to Defendants' execution of [policies] and practices that in their judgment is necessary to preserve internal order and to maintain institutional security.

*Karsjens*, 2022 WL 542467, at *13 (citations omitted).

As with COA 1, the claim-preclusion elements apply to COA 6. *Karsjens* has led to a final judgment on the merits, the *Karsjens* court acted with proper jurisdiction, Plaintiffs here were *Karsjens* class members ably represented there by counsel, and COA 6 here plainly overlaps with Count VI there. The Court thus recommends dismissing COA 6 with prejudice.

## G.    COA 7—"Cruel and Unusual Punishment"

COA 7 alleges that Defendants' actions violated Plaintiffs' "constitutional right to be free from cruel and unusual punishment" under the Fifth, Eighth, and Fourteenth Amendments. *Bishop* Docket No. 1 at 108. As with various other COAs, Plaintiffs here simply refer the reader back to all prior paragraphs of the Complaints. *See id.* Generally, however, the Complaints have several sections detailing ostensibly punitive behavior. *See id.* at 37–62.

As a preliminary point, the Court notes that numerous cases—including *Karsjens*—conclude that the crucial issue for MSOP clients is not whether they face cruel and unusual punishment under Eighth Amendment standards. That standard applies to convicted prisoners, but civilly committed individuals, of course, are not convicted prisoners. The Eighth Circuit has indicated that with respect to civilly committed individuals, the key punishment-related concern is that, under the Fourteenth Amendment, "civilly committed individuals may [not] be

punished"—that is, punished *at all*—"without running afoul of the Fourteenth Amendment." *Karsjens*, 988 F.3d at 1052 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)); *see also id.* at 1053 ("We conclude that the *Bell* standard applies equally to conditions of confinement claims brought by pretrial detainees and civilly committed individuals, as neither group may be punished.").  Furthermore, *Karsjens* set out the appropriate test to apply:

> In analyzing whether a condition of confinement is punitive, courts "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  Unless the detainee can show "an expressed intent to punish . . . , that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation'" to such alternative purpose.

*Id.* (citing cases; internal citation omitted).

So the test for assessing whether practices or conditions are punishment, for present purposes, appears to be set.  This of course leaves the question of application: to what Complaint allegations should the Court apply this test?  *Karsjens* bears on this point as well, for Judge Frank's recent order applied the *Bell* test to a wide array of MSOP conditions and found that they were not punishment.  *See, e.g., Karsjens*, 2022 WL 542467, at *6–7; *see also id.* at *14 ("The Court finds insufficient evidence to conclude that Defendants instituted any of the challenged policies or conditions with intent to punish Plaintiffs.  The Court also finds that Plaintiffs have failed to establish that any of the challenged policies or conditions bear no reasonable relation to a legitimate government interest, or are excessive to that interest, within the meaning of *Bell*.").

Under the claim-preclusion principles discussed above, to the extent that Plaintiffs' present Complaints claim that certain policies or conditions are punishment, those claims are

precluded if *Karsjens* addressed the same policies or conditions.  Generally speaking, the pol-

icies and conditions addressed in *Karsjens* included the following:

- MSOP use of double-occupancy rooms.

- MSOP use of "Behavioral Expectation Reports" and a related grievance procedure.

- MSOP reliance on a "High Security Area."

- MSOP policies for the "movement or transport" of MSOP clients, including the "use of restraint when transporting Clients out of its facilities."

- The quality of MSOP meals.

- Alleged denials of access to group therapy.

- MSOP procedures for disposing of confiscated property.

- MSOP handling of furniture removal.

- MSOP tying of "vocational programming opportunities and hours to rule compliance and treatment engagement."

*Id.* at *15–17; *see also Karsjens* Docket No. 635 at 35–40 (listing various policies and practices

and calling them "punitive").[14]

---

[14] In addition to discussing Behavioral Expectation Reports and the High Security Area, the *Karsjens* Third Amended Complaint lists the following "[o]ther punitive policies and practices":

    a.    punishing Plaintiffs and Class members by denying access to group therapy;

    b.    intentionally and unnecessarily, delaying delivery of mail to Plaintiffs and Class members;

    c.    unreasonably restricting Plaintiffs' and Class members' access to, and conduct during, visitation;

    d.    restricting Plaintiffs' and Class members' access to both a regular library and a law library;

    e.    denying Plaintiffs' and Class members' access to recreational activities and exercise;

    f.    restricting what can be purchased by Plaintiffs and Class members from the inmate store;

    g.    denying Plaintiffs and Class members educational programming;

So if one dismisses, on claim-preclusion grounds, any claims in Plaintiffs' Complaints that overlap with the claims in *Karsjens*, what remains?  For two reasons, the Court will leave resolving this task to the parties in later proceedings (e.g., briefing on a possible motion to dismiss).  First, the sheer bulk of Plaintiffs' allegations about things that may constitute

---

    h.     denying Plaintiffs and Class members any meaningful employment oppor-tunities;

    i.      permitting MSOP staff to punish Plaintiffs and Class members by denying them employment;

    j.     denying Plaintiffs and Class members access to hobbies;

    k.    restricting the time Plaintiffs and Class members are allowed access to the yard;

    l.     allowing staff to punish Plaintiffs and Class members by denying them ac-cess to the yard or to the gym;

    m.   allowing staff to punish Plaintiffs and Class members by locking them in their cell;

    n.    punishing Plaintiffs and Class members by removing furniture;

    o.    executing security checks every half hour by knocking loudly and disrup-tively on the cells of Plaintiffs and Class members;

    p.    creating a patient disciplinary board for Plaintiffs and Class members that does not follow constitutional standards of due process;

    q.    creating policies that, as implemented, supersede statutory rights provided to Plaintiffs and Class members under the Patient Bill of Rights;

    r.     taking away the basic life skills of allowing Plaintiffs and Class members to manage their personal financial affairs;

    s.     taking away the right for Plaintiffs and Class members to visit each other's cells;

    t.     taking away the right to drug and alcohol treatment for Plaintiffs and Class members;

    u.    denying Plaintiffs and Class members the right to greet and shake hands with other peers in treatment;

    v.    denying Plaintiffs and Class members the right to share food and other items with others; and

    w.   denying Plaintiffs and Class members the right to wear certain clothes such as hats, bandanas, and muscle shirts, within the confines of their own living units.

*Karsjens* Docket No. 635 at 38–39.

punishment are lengthy, as are the list of things discussed in *Karsjens* opinions and/or cited in the *Karsjens* Third Amended Complaint. Second, it has been over ten years since Plaintiffs filed these complaints, so whatever policies or conditions triggered these complaints in 2012 may have been altered or addressed. Third, claim preclusion can foreclose not just claims that parties did litigate in earlier proceedings, but claims that they should have litigated before. Assuming that Defendants may raise this aspect of claim preclusion in further proceedings, it makes sense to hash out what remains of Plaintiffs' claims then and there.

The Court therefore recommends dismissing with prejudice COA 7 to the extent that it raises policies and conditions addressed in *Karsjens*, fully aware that this proviso's scope awaits further consideration.

### H.    COA 8—"The Right to be Free from Double Jeopardy"

COA 8 suggests that Defendants' conduct violated Plaintiffs right "to be free from double jeopardy" under the First, Fifth, and Fourteenth Amendments. *Bishop* Docket No. 1 at 108–09. Under the Fifth Amendment, no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb," and this guarantee applies to the States under the Fourteenth Amendment. U.S. Const., amends. V, XIV.[15] Plaintiffs' double-jeopardy theory is unclear; as best as the Court can tell, Plaintiffs assert that, given MSOP conditions, being placed in MSOP is somehow being "twice put in jeopardy of life or limb" based on conduct for which Plaintiffs were already punished.

As the discussion throughout this document suggests, Plaintiffs present a vast array of claims about how MSOP conditions are themselves unconstitutional. Those claims are discussed as presented and are separate issues from whether civil commitment to MSOP comprises "double jeopardy" for federal constitutional purposes. The distinct question of whether

---

[15] The First Amendment does not bear on the double-jeopardy protection, so going forward, the Court will ignore the First Amendment for COA 8 purposes.

civil commitment to MSOP *itself* comprises double jeopardy has been addressed by earlier

cases: it does not.  As a Court in this District recently explained:

> [T]he United States Supreme Court has upheld the constitutionality
> of civil commitment statutes for sexually dangerous individuals.
> The Supreme Court reasoned that, "the confinement's potentially
> indefinite duration is linked, not to any punitive objective, but to the
> purpose of holding a person until his mental abnormally no longer
> causes him to be a treat to others."  Minnesota courts have specif-
> ically concluded that the MCTA is a civil commitment statute.  Thus,
> Plaintiff's commitment under § 253D is not tantamount to "punish-
> ment" and therefore does not constitute a second prosecution.
> Similarly, even though Plaintiff's commitment followed a prison
> term, it does not violate the Double Jeopardy Clause.

*Stabnow v. Lourey*, No. 19-CV-1664 (NEB/HB), 2020 WL 4513022, at *9 (D. Minn. Mar. 16,

2020) (citations omitted), *report and recommendation adopted*, 2020 WL 2093260 (D. Minn.

Apr. 30, 2020); *cf. Kansas v. Hendricks*, 521 U.S. 346, 369 (1997) (containing U.S. Supreme

Court's discussion of double-jeopardy aspects of civil commitment).

Given this treatment, the Court concludes that Plaintiffs' civil commitment, in and of it-

self, cannot ground a double-jeopardy claim.  The Court therefore recommends dismissing

COA 8 for failure to state a claim.  Furthermore, because the Court sees no way that Plaintiffs

could amend this claim to fix the relevant problem, the Court recommends dismissing this COA

with prejudice.

## I.    COA 9—"Denial of Due Process in Violation of the [14th] Amendment of the United States Constitution and 42 U.S.C. § 1983"

COA 9 alleges that Defendants have violated Plaintiffs' Fourteenth Amendment "due

process rights."  *Bishop* Docket No. 1 at 109.  The relevant conduct is apparently all the conduct

described in the Complaints.  *See id.* (incorporating by reference all prior paragraphs).  While

there are technically two types of constitutional due process—procedural due process and sub-

stantive due process—Plaintiffs do not specify which type of claim COA 9 presses.  The Court

will thus address the two types of claims in turn.

### 1.    Procedural due process

As the Court understands COA 9's procedural-due-process component, Plaintiffs claim that various procedures and policies at MSOP fail to provide required procedural protections to MSOP clients. As with Plaintiffs' claims that various policies constitute impermissible punishment, Plaintiffs point to a wide variety of policies and procedures that allegedly generate procedural-due-process problems.

Thus, Plaintiffs' procedural-due-process claims rise or fall doctrinally alongside the punishment claims in COA 7. Case law indicates that the ban on punishing civilly committed persons arises from procedural-due-process protections. For instance, in *Bell*, the Supreme Court stated, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty *without due process of law*, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. *For under the Due Process Clause*, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." 441 U.S at 535 (citing cases; footnote omitted; emphasis added); *see also Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (noting that "'[d]ue process requires that a pretrial detainee not be punished," and applying *Bell* standard to assess conditions-of-confinement claim (quoting *Bell*)).

Reviewing the elements of a procedural-due-process claim bolsters the point. To state a procedural-due-process claim, a plaintiff must allege that "'(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the [protected] interest.'" *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 966 (8th Cir. 2015) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). The ban on punishing civilly committed individuals, functions as a specialized form of this inquiry—the idea being that punishing a civilly committed individual is inappropriate because it involves interest-

deprivations done without procedural protections adequate for the deprivation.  *See, e.g.*, *Hall v. Ramsey Cnty.*, 801 F.3d 912, 919 (8th Cir. 2015) (transitioning from procedural-due-process elements to discussion of punishment standard for "involuntarily committed individuals," then applying *Bell* standard (citing cases)).

The Court thus concludes that Plaintiffs' COA 7 punishment claims are inextricably linked to their procedural-due-process claims.  The upshot is that when Judge Frank applied the *Bell* standard and found that various policies and practices in *Karsjens* were not punishment, he was also determining that those policies' use did not violate procedural due process. This in turn means that, for the policies and practices at issue in *Karsjens*, claim-preclusion principles apply and bar this Court from revisiting whether those policies and practices comply with procedural due process.  The Court therefore recommends dismissing COA 9 to the extent that it depends on policies or conditions addressed in *Karsjens*.

As discussed above as to COA 7, the Complaints here may well refer to policies and practices that *Karsjens* did not address.  The Court has declined to sift through the *Karsjens* pleadings and decisions and the present Complaints to determine exactly what policy-based claims are in and which are out, but has instead, left that to the parties.  In parallel fashion, the Court will require the parties to determine as these cases proceed which policy-based claims are precluded as a result of *Karsjens*, and which remain for purposes of COAs 7 and 9.

### 2. Substantive due process

This leaves the question of whether the Complaints state a claim for violations of substantive due process.  They do not.

"To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience." *Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (citing *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013)).  Fundamental rights here are those

"deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting cases (cleaned up)); *see also, e.g.*, *Karsjens v. Piper*, 845 F.3d 394, 408 (8th Cir. 2017) (citing cases). As for shocking the conscience, this means only "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quotation marks omitted).

The Eighth Circuit has already determined that MSOP-related civil-commitment procedures themselves do not violate substantive due process, so claim preclusion bars Plaintiffs here from retrying that argument. This leaves the question of whether any of the various policies listed and conditions in the Complaints violate substantive due process. Given what the various *Karsjens* decisions have left intact, the Court cannot conclude that any of the matters that Plaintiffs here cite meet both parts of the *Glucksberg* test. The Court therefore recommends dismissing COA 9 without prejudice to the extent it seeks to assert a substantive due process claim.

### J.    COA 10—"Conspiracy to Deny Due Process in Violation of the [14th] Amendment of the United States Constitution and 42 U.S.C. § 1985(3)"

COA 10 of the Complaints alleges that Defendants "conspired to deprive [Plaintiffs of [their] due process rights under the [Fourteenth] Amendment . . . and 42 U.S.C. [§ 1985(3)]." *Bishop* Docket No. 1 at 110.

The Court addresses the Fourteenth Amendment–violating conspiracy first. To press "a § 1983 claim against a particular officer, a plaintiff must show that the officer conspired with others to deprive the plaintiff of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Saunders v. Thies*, 38 F.4th 701, 715 (8th Cir. 2022) (quoting *Kingsley v.*

*Lawrence Cnty.*, 964 F.3d 690, 702 (8th Cir. 2020) (cleaned up)); *Yang v. City of Minneapolis*, No. 21-CV-2658, 2022 WL 2160425, at *10 (D. Minn. June 15, 2022) (reciting similar elements (quoting *Holmes v. Slay*, 895 F.3d 993, 1001 (8th Cir. 2018)).  This means that for COA 10 to state a § 1983 conspiracy claim based on some alleged conspiracy to deprive Plaintiffs' of due process, Plaintiffs must somewhere plausibly allege overt acts by one or more Defendants in service of this conspiracy.

In this Court's view, the fact that essentially no Complaint allegations are limited to specific individuals (as well as the limited nature of what more-particular allegations do exist) means that the Complaints fail to make any plausible, particularized allegation that Defendants engaged in any particular overt acts furthering a due-process-depriving conspiracy.  As a result, the Complaints fail to state any § 1983 conspiracy claim.

This leaves Plaintiffs' conspiracy claim under 42 U.S.C. § 1985(3).  To allege a § 1985(3) conspiracy, a plaintiff must allege:

> (1) that the defendants conspired, (2) with the intent to deprive [him] of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that [he] was injured or deprived of having and exercising any right or privilege of a citizen of the United States.

*Mendoza v. U.S. Immigr. & Customs Enf't*, 849 F.3d 408, 421 (8th Cir. 2017) (quoting *Crutcher-Sanchez v. Cty. of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012)).  The third element here contains an act requirement, so the above analysis bars Plaintiffs' § 1985(3) claim as well.  Furthermore, the second element above places a substantive limit on the conspiracies reached by § 1985(3): to state a § 1985(3) claim, the relevant conspiracy must aim at depriving (as relevant here) the "equal protection of the laws."  COA 10 purports to allege a conspiracy based on deprivations of due process, not equal protection, and therefore fails on this ground as well.

30

The Court therefore recommends dismissing COA 10 without prejudice for failure to state a claim.

### K.    COA 11—"Intentional Infliction of Emotional Distress"

COA 11 claims that Defendants' conduct "caused [P]laintiff extreme emotional distress" and was "either intentional[] or reckless[]."  *Bishop* Docket No. 1 at 110.  Plaintiffs invoke here Minnesota's state-law intentional-infliction-of-emotional-distress (IIED) tort.  *See id.* at 117. That COA has four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003) (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983)); *see also, e.g.*, *Wenigar v. Johnson*, 712 N.W.2d 190, 207 (Minn. Ct. App. 2006) (citing *Hubbard*).  The Minnesota Supreme Court has repeatedly warned that IIED only applies in flagrant cases.  *See, e.g.*, *Langeslag*, 664 N.W.2d at 864 (Minn. 2003) ("We have cautioned that [IIED] is 'sharply limited to cases involving particularly egregious facts' and that a 'high threshold standard of proof' is required to submit the claim to a jury." (quoting *Hubbard,* 330 N.W.2d at 439)).

Plaintiffs do not specify any particular conduct in the Complaints as giving rise to COA 11; again, they presumably mean to refer to all discussed conduct.  *See Bishop* Docket No. 1 at 110 (incorporating by reference all prior Complaint paragraphs).  The Court need not— so will not—decide whether that conduct (or, at least, the portion still at issue after this Court's recommendations about Plaintiffs' other COAs) is "extreme and outrageous" and/or "intentional or reckless" for IIED-tort purposes.  This is because Plaintiffs fail to sufficiently allege that Defendants' conduct caused the needed "severe" emotional distress.  Even for motion-to-dismiss purposes, a plaintiff pressing an IIED claim must make some "showing . . . that the conduct caused [him or] her to suffer severe emotional distress."  *Stead-Bowers v. Langley*, 636 N.W.2d 334, 343 (Minn. Ct. App. 2001) (affirming IIED-claim dismissal where plaintiff made no such

showing); *see also, e.g.*, *Yang v. Robert Half Int'l, Inc.*, No. 19-CV-2669, 2020 WL 5366771, at *7 (D. Minn. Sept. 8, 2020) (dismissing IIED claim where plaintiff failed to allege severe emotional distress), *reconsideration denied*, 2021 WL 1111126 (D. Minn. Mar. 23, 2021); *Loomer v. Tlaib*, No. 19-CV-2322, 2019 WL 6840184, at *3 (D. Minn. Dec. 16, 2019) (same).

Plaintiffs' Complaints here simply assert that Defendants' conduct caused "extreme emotional distress," with this or other conclusory wording; nothing catalogs the alleged distress. *See, e.g.*, *Bishop* Docket No. 1 at 36, 39, 90, 103, 110. As such, Plaintiffs' emotional-distress assertions are textbook examples of the sort of "[t]hreadbare recitals of . . . elements of a cause of action, supported by mere conclusory statements[,] [that] do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir.) (quoting *Iqbal*), *reh'g denied*, 34 F.4th 1123 (8th Cir. 2022). The Court therefore recommends dismissing Plaintiffs' IIED claims without prejudice for failure to state a claim.

### L.    COA 12—"Negligent Infliction of Emotional Distress"

COA 12 asserts a claim for *negligent* infliction of emotional distress (NIED), *see Bishop* Docket No.1 at 110—and like COA 11, this refers to a Minnesota state-law tort. To allege an NIED claim, a plaintiff must first allege the four elements of a Minnesota state-law negligence claims: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty being the proximate cause of the injury." *Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005) (citing *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001)); *see also, e.g.*, *Bergman v. Johnson & Johnson*, No. 20-CV-2693, 2021 WL 3604305, at *4 (D. Minn. Aug. 13, 2021) (citing *Engler*). The plaintiff must also allege three additional elements: that he (1) was "'within the zone of danger'" created by the negligence, (2) "'reasonably feared for [his] own safety,'" and (3) "'suffered severe emotional distress with attendant physical manifestations.'" *Engler*, 706 N.W.2d at 767 (quoting *K.A.C. v. Benson*, 527

N.W.2d 553, 559 (Minn. 1995) (brackets added)); *Bergman*, 2021 WL 3604305, at *4 (quoting *Engler*).

As with the IIED claim, Plaintiffs do not isolate any particular conduct as underlying their NIED claim; everything in the Complaints is purportedly involved. *See Bishop* Docket No. 1 at 110 (incorporating by reference all prior Complaint paragraphs). But again, the Court need not opine on whether Plaintiffs sufficiently allege any negligence elements, fell within an appropriately tailored "zone of danger," or reasonably feared for their safety. All that need be done here is assess whether Plaintiffs properly alleged that they have suffered severe emotional distress with attendant physical manifestations. They have not.

As a threshold point, it seems to the Court that Plaintiffs here have failed to allege that they suffered "severe" emotional distress; the preceding discussion of severity for IIED purposes seems to dictate that Plaintiffs have not properly alleged severe distress for NIED purposes as well. *Cf. Bissonette v. Luskey*, No. 02-CV-0335, 2003 WL 1700466, at *2 (D. Minn. Mar. 27, 2003) (noting that "severe emotional distress is an essential element of both causes of action, though the standard may differ slightly," and citing cases reaching different conclusions). But even if severity means different things in the two contexts, the NIED tort requires allegations of "attendant physical manifestations" underpinning the distress. *Cf. Leaon v. Washington Cnty.*, 397 N.W.2d 867, 875 (Minn. 1986) (affirming trial-court decision not to allow NIED claim where relevant plaintiff's alleged physical manifestations were that "he lost weight (later regained), became depressed, and exhibited feelings of anger, fear, and bitterness"); *Brown v. Chiappetta*, 806 F. Supp. 2d 1108, 1120 (D. Minn. 2011) (citing *Leaon*). The Complaints here have no such allegations (much less the sort rejected in *Leaon* and *Brown*). To be sure, the Complaints include a boilerplate assertion that Plaintiffs' emotional distress has "attendant physical manifestations," *see Bishop* Docket No. 1 at 111, but as already noted,

conclusory statements like this do not get litigants over the line. The Court therefore recommends dismissing Plaintiffs' NIED claims (without prejudice) for failure to state a claim.

### M    COA 13—"Obligation of Contracts"

The Complaints' thirteenth cause of action contends that Defendants violated the U.S. Constitution's Contracts Clause. *See Bishop* Docket No. 1 at 111. Under the Clause, "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10, cl. 1. As the Court understands Plaintiffs' theory, they contend that as part of being sent to MSOP, they entered into a "treatment contract" that Defendants then violated because the MSOP-provided "treatment" was deficient. *See Bishop* Docket No. 1 at 33.

Simply put, there is no Contracts Clause claim here. One key to a Contracts Clause claim is that there is a preexisting contract between various parties, which is then arguably affected by a subsequently passed state law. Under current doctrine, courts then apply a two-part test to determine whether the state law impermissibly impairs the preexisting contractual relationship. *See, e.g.*, *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018) (discussing doctrine and citing cases); *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022) (same). That test does not even come into play here, however, because Plaintiffs do not allege a preexisting contract affected by a subsequent state-law change. Plaintiffs here are saying—at best—that they have treatment contracts with the state and that MSOP fails to meet those contracts' terms. The Court therefore recommends dismissing COA 13 without prejudice for failure to state a claim.

### N.    COA 14—"Negligent Hiring and Credentialing of Defendants"

The Complaints' COA 14 contend that Defendants' conduct reflects that all named Defendants "are [n]egligent in hiring and credentialing MSOP [employees] in violation of the [Fifth and Fourteenth Amendment[s]" and 42 U.S.C. § 1983. *Bishop* Docket No. 1 at 112. In a section of the Complaints addressing this COA, Plaintiffs claim that "MSOP employees are

unqualified and are not trained in dealing with civilly committed patients," and that Defendants themselves "are neither trained nor qualified to deal with mental health and emotion management issues." *Id.* at 90.

The COA's focus on negligence dooms the claim. While § 1983 contains no state-of-mind requirement of its own, "in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right[.]" *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986); *see also, e.g.*, *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1054 (8th Cir. 2020) (quoting *Daniels*). Plaintiffs' claims—due-process claims aimed at state officials overseeing civilly committed individuals—fall under the Fourteenth Amendment. As the Supreme Court has noted, the Fourteenth Amendment's due-process guarantee has "[h]istorically . . . been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels*, 474 U.S. at 331. But "[w]here a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is *constitutionally* required.'" *Id.* at 333 (quoting *Parratt v. Taylor*, 451 U.S. 527, 548 (1981) (Powell, J., concurring)). The upshot is that to properly plead a Fourteenth Amendment claim, a plaintiff must allege more than negligence. *See, e.g.*, *Lunon v. Botsford*, 946 F.3d 425, 432 (8th Cir. 2019).

For purposes of COA 14, however, all that Plaintiffs plead is negligence. See *Bishop* Docket No. 1 at 111–12. Because this is insufficient to ground a Fourteenth Amendment claim, the Court recommends dismissing COA 14 without prejudice for failure to state a claim.

### O.    COA 15—"Totality of the Conditions"

COA 15 argues that Defendants' conduct described in the Complaints "have made [Plaintiffs] currently suffer in the totality of the conditions," thereby violating the Fourteenth Amendment. *Id.* at 112. Under this liability theory, "conditions that, by themselves, may not be constitutionally offensive, may become so when occurring in combination"; in other words, "[t]he constitutional totality, in effect, becomes greater than the sum of its parts." 1 Michael B.

Mushlin, Rights of Prisoners § 3:91, Westlaw (through October 2022 update).  The Court assumes that Plaintiffs' claim here is that the MSOP conditions that they allege, considered in their totality, constitute impermissible punishment.

The Supreme Court noted in *Rhodes v. Chapman* that institutional conditions, "alone or in combination," can "deprive inmates of the minimal civilized measure of life's necessities." 452 U.S. 337, 347 (1981).  In *Wilson v. Seiter*, the Supreme Court clarified the point, noting that "*some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ."  501 U.S. 294, 305 (1991) (citing cases) (emphasis in original).  In both cases, the question was whether conditions led to "cruel and unusual punishment," a distinct question from the one key here—i.e., whether conditions led to punishment itself more broadly.  The Eighth Circuit recently indicated, however, that when considering when circumstances, considered in their totality, are punishment, a court should not "focus narrowly and require deprivation of any single need."  *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 909 (8th Cir. 2020).  This suggests that totality-of-conditions claims can also apply—and perhaps not as strictly as *Wilson* suggests—where a litigant's claim is whether or not conditions in total can comprise inappropriate punishment.

At the present time, particularly given the Eighth Circuit's statement in *Stearns*, the Court cannot conclude that Plaintiffs fail to state a totality-of-conditions claim.  The Court therefore does not recommend COA 15's dismissal.

## P.    COA 16—"Supervisor Liability"

The Complaints' next cause of action refers to "supervisory liability," and states that Defendants "fail[] to [s]upervise their employees," in violation of the Fourteenth Amendment. *Bishop* Docket No. 1 at 113.

To the extent that Plaintiffs' references to supervisory liability would make certain Defendants liable for their reports' conduct, this cause of action straightforwardly fails. As relevant here, for purposes of pressing Fourteenth Amendment violations, Plaintiffs bring these actions under 42 U.S.C. § 1983. Section 1983 "does not allow for vicarious liability," so "[i]n an action under § 1983, a supervisor may be liable only for his own misconduct." *Street v. Leyshock*, 41 F.4th 987, 989 (8th Cir. 2022) (citing *Iqbal*, 556 U.S. at 676–77); *see also, e.g.*, *Andrews v. Brott*, No. 20-CV-980, 2022 WL 1542137, at *6 (D. Minn. Mar. 23, 2022), *report and recommendation adopted*, 2022 WL 1541590 (D. Minn. May 16, 2022).

That said, § 1983 does permit a supervisor to be held liable where "'a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)); *see also, e.g.*, *Cole v. Does*, 571 F. Supp. 3d 1033, 1044 (D. Minn. 2021) (quoting *Perkins*). To state a supervisory-negligence claim, a plaintiff must allege "that the supervisor '(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff].'" *Perkins*, 915 F.3d at 524 (quoting *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018)); *Cole*, 571 F. Supp. 3d at 1044 (quoting *Perkins*).

Because supervisory liability requires an underlying constitutional-right deprivation, it follows that supervisory liability in this case can exist only for whatever constitutional-right violations withstand dismissal (here, or in the future). This becomes a problem for Plaintiffs when one considers supervisory liability's notice requirement. The Eighth Circuit recently discussed this requirement's "rigorous standard":

> "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." "Allegations of generalized notice are insufficient." "To impose supervisory liability, other misconduct

> must be very similar to the conduct giving rise to liability." In other words, the supervisor must have "notice of a pattern of conduct that was sufficiently egregious in nature." A "single incident, or a series of isolated incidents, is usually insufficient to infer a pattern." . . . A supervisor's "mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983." (citation omitted).

*Davis v. Buchanan Cnty.*, 11 F.4th 604, 624–25 (8th Cir. 2021) (citations omitted), *cert. denied*, 142 S. Ct. 777 (2022).

Combined with the need for an underlying constitutional violation, the notice requirement means that to plead a supervisory-liability claim, Plaintiffs must provide particularized notice allegations for supervisory liability over constitutional claims that survive; generalized notice allegations will not do. As best the Court can tell, Plaintiffs try to fulfill the notice requirement largely by saying that the underlying constitutional violations are "obvious, flagrant, rampant and of continued duration," such that they presumably should have been clear to Defendants. *See Bishop* Docket No. 1 at 62. This, of course, is just the sort of generalized notice allegations that the Eighth Circuit condemns. And while Plaintiffs may get closer to stating the notice element when they state that Defendants "have been put on notice by and through [an] MSOP audit report," none of the Complaints' scattered references to that audit seem to refer to claims that will survive dismissal if this Court's recommendations are adopted. *See id.* at 89–90 (concerning negligent hiring of MSOP staff); *id.* at 97 (concerning availability of less-restrictive alternatives to MSOP commitment). It is Plaintiffs' burden to properly allege notice, and the burden is not met here.

The Court therefore recommends dismissing COA 16 without prejudice for failure to state a claim.

### Q.   COA 17—"Violation of the Police Powers of the State"

COA 17 of Plaintiffs' Complaints asserts that Defendants' conduct violates the "Parens Patriae powers of the state[,] in violation of the 10th Amendment of the United States

Constitution."  *See id.* at 113; *see also id.* at 102–03 (presenting allegations section titled "Parens Patriae Violation").  Under the Tenth Amendment, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const., amend. X.

Plaintiffs suggest that Defendants' conduct "violates the Tenth Amendment . . . with obvious clarity," *see Bishop* Docket No. 1 at 103, but this is—to say the least—hard to follow.  The Tenth Amendment's wording suggests no obvious application to this case.  As best as the Court can tell, Plaintiffs' theory is Minnesota's exercise of the "police powers of the state" carries with it certain obligations, but the State has failed to follow through.  *See, e.g.*, *id.* at 102.  There is simply nothing here bearing on structural constitutional questions of which governmental powers belong to the federal government as opposed to the states.

Even construing the Complaint liberally and focusing on Plaintiffs' use of the term "parens patriae" (i.e., ignoring the Tenth Amendment's obvious irrelevance), COA 17 fails to state a cause of action.  The *parens patriae* doctrine concerns when a state has standing to press claims based on its own "'quasi-sovereign' interest[s]."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982); *Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 872 (8th Cir. 2015) (quoting *Snapp*).  But there is no issue of state standing here: Plaintiffs in no way represent the State of Minnesota here; indeed, the State is effectively a defendant here.  So the Complaints' references to "parens patriae," like their Tenth Amendment invocations, are misnomers.  The Court therefore recommends dismissing COA 17 for failure to state a claim.

### R.    COA 18—"Violation of the Oath of Office"

COA 18 asserts that Defendants Swanson and Dayton have violated "their Oath of Office under Article 6, 3 of the United States Constitution" by supporting Plaintiffs' MSOP

placement.[16]  *Bishop* Docket No. 1 at 114.  (At the time Plaintiffs' filed these suits, Swanson was Minnesota's attorney general; Dayton, the State's governor.)  Under Article VI, Section 3, "all executive and judicial Officers, both of the United States and of the several states, shall be bound by Oath or Affirmation, to support [the] Constitution."  The idea here, apparently, is that Swanson and Dayton must have taken this oath to take their prior offices, but then violated it by permitting allegedly unconstitutional conduct.

The argument here is a nonstarter.  Strictly speaking, what the Oath of Office Clause requires is simply that state officers take the oath or otherwise affirm that they will support the Constitution.  The Complaint nowhere alleges that Swanson or Dayton failed to take the relevant oath or make the relevant affirmation.  The upshot is that the complaints here do not plead any violation of the Oath of Office Clause.

Of course, Plaintiffs' point here is slightly different—their argument is not really about a violation of the Oath of Office Clause proper.  What Plaintiffs contemplate here is a theory of the Oath of Office Clause under which, if a government official takes the oath or makes the relevant affirmation, then does something that violates the Constitution, the officeholder has violated the oath.  So the question for this COA is whether there is any support for this sort of violation-of-oath-of-office claim.  There is not.  *See, e.g.*, *Mechler v. Hodges*, No. C-1-02-948, 2005 WL 1406102, at *7 (S.D. Ohio June 15, 2005) ("Neither the Constitution nor statutes which require state or federal officials to take oaths of office create a private cause of action for acting contrary to the Constitution." (citing cases)); *see also, e.g.*, *West v. Jones*, No. 1:14-CV-2298, 2015 WL 2450538, at *8 (N.D. Ala. May 22, 2015) (citing cases); *Diaz v. Second*

---

[16] This, then, is the rare case where Plaintiffs have actually specifically isolated particular conduct to particular Defendants.  As we shall see, however, COA 18 fails to state a claim anyway, putting aside Plaintiffs' better pleading practices on this point.

*Jud. Dist. Ct.*, No. 00-CV-0577, 2000 WL 36739558, at *3 (D.N.M. Dec. 7, 2000) (same).  As a result, the Court recommends dismissing COA 18.

**S.    COA 19—"Defendants Are in Violation of [14th] Amendment to the United States Constitution and 42 U.S.C. § 1983 in Support of Preventative Detention"**

In COA 19, Plaintiffs claim that Defendants "unconstitutionally support [p]reventative [d]etention," and further state that the civil commitment contract is "against PUBLIC POLICY." *Bishop* Docket No. 1 at 114.  Plaintiffs point to the Fourteenth Amendment as support for the claim, *see id.*; as best the Court can tell, COA 19's thrust is that MSOP impermissibly lets state officials place individuals into a form of detention to prevent them from committing a crime.  Given MSOP's role as a form of civil commitment, it is hard to understand this claim as anything other than a full-scale claim that MSOP is root-and-branch unconstitutional.  *See, e.g.*, *id.* at 32 (referring to "unconstitutional preventative detention" in paragraph generally asserting unconstitutionality of MSOP's authorizing statute); *id.* at 96, 102 (same).

Understood this way, claim preclusion plainly bars COA 19.  Claim I in *Karsjens* specifically addressed whether MSOP's authorizing statute "is [u]nconstitutional on [i]ts [f]ace." *Karsjens* Docket No. 635 at 59.  The various *Karsjens* complaints do not use the term "preventative detention," but the issue was plainly in the litigants' minds.  *See, e.g.*, *Karsjens*, 2015 WL 420013, at *10 ("At the heart of Plaintiffs' Third Amended Complaint is the contention that Minnesota's civil commitment scheme for sex offenders constitutes a punitive system of *preventive detention* in violation of the due process requirements of the Fourteenth Amendment." (emphasis added)).  And the Eighth Circuit specifically determined that § 253D was constitutional on its face.  *See, e.g.*, *Karsjens*, 845 F.3d at 408–10.  As all the claim-preclusion elements discussed above apply here, the resolution of *Karsjens* dictates that COA 19 is claim-precluded here.  The Court therefore recommends dismissing COA 19.

41

**T.**      **COA 20—Denial of Health Care and Affordable Housing**

In COA 20, Plaintiffs contend that Defendants' conduct violated Plaintiffs' "constitutional right to Health Care and Affordable Housing," in violation of Plaintiffs' rights under the Fifth and Fourteenth Amendments. *Bishop* Docket No. 1 at 115.[17]  Given the other COAs at issue here (e.g., COA 1's claim of a failure to provide treatment, COA 6's claim of failure to provide a less-restrictive alternative to MSOP), the Court construes the "right to Health Care" claim here to refer to some sort of freestanding health-care right.

For better or worse, the federal constitution (including the Fifth and Fourteenth Amendments) does not provide any sort of generalized right to health care. *See, e.g.*, *Maher v. Roe*, 432 U.S. 464, 469 (1977) ("The Constitution imposes no obligation on the States . . . to pay any of the medical expenses of indigents."); *Youngberg*, 457 U.S. at 317 ("As a general matter, a State is under no constitutional duty to provide substantive services for those within its border." (citing cases)).  Similarly, there is no constitutional right to housing. *See, e.g.*, *Lindsey v. Normet*, 405 U.S. 56, 74 (1972) ("[T]he Constitution does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality . . . ."); *Wilkerson v. City of Coralville*, 478 F.2d 709, 712 (8th Cir. 1973) (quoting *Lindsey*).  As a result, the Court recommends dismissing COA 20.

---

[17] This COA features the one major substantive difference between the four Complaints at issue here: the Goodwin Complaint refers to a "constitutional right to Indian Health Care and Affordable Indian Housing" in COA 20, and also features a brief reference to the "Indian Self [D]etermination Act." *Goodwin* Docket No. 1 at 2, 117.  For the reasons described in the text, the Constitution simply contains no positive right to "Indian Health Care" or "Affordable Indian Housing."  As for the cited statute, Goodwin presumably refers here to the Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, 88 Stat. 2203 (1975) (codified as amended in various sections of 25 and 42 U.S.C.).  Goodwin provides no citation to any Act provision bearing on Defendants' liability here, and this Court's review of the Act suggests no plausible causes of action.  The Court therefore recommends dismissing the COA 20 variant in the *Goodwin* Complaint, notwithstanding its differences from COA 20 in the other Complaints.

**U.    COA 21—"Conspiracy to Place Plaintiff Outside of the Law in Violation of the [1st, 5th, and 14th] Amendments of the United States Constitution and 42 U.S.C. [§ 1985(3)]"**

The Complaints' penultimate cause of action asserts that Defendants have "conspired to deprive plaintiff [of] access to the court by committing *overt acts* to render [plaintiff] civilly dead in violation of the 1st, 4th, 5th, and 14th amendments of the U.S. Constitution and 42 U.S.C. §1985 (3)." *Bishop* Docket No. 1 at 115 (emphasis in original).

This Court has of course already dealt at length with various claims by plaintiffs under these various constitutional amendments—the special point purportedly being made here involves some sort of conspiracy to render Plaintiffs' "civilly dead." The argument here—to the extent Plaintiffs' mean to assert some standalone cause of action—is an utter mystery. The Complaints have one sentence on this "civil death" issue: in a discussion of Minn. Stat. § 253B.185, the plaintiffs assert that under that legislation, they believe that they "only retain[] illusory rights without any state rights available" and that they are (therefore?) "simply civilly dead." *Bishop* Docket No. 1 at 88–89.

Plaintiffs point to no authority underpinning this notion of a cause of action for "civil-death conspiracy," and this Court is aware of none. To the extent this cause of action means to stress Plaintiffs' views that Defendants are violating their rights under the First, Fourth, Fifth, and Fourteenth Amendments, the Court refers the reader to the more-specific discussions of alleged violations of those rights above and recommends dismissing COA 21 as duplicative. To the extent Plaintiffs mean something else, the Court recommends dismissing this cause of action for failure to state a claim.

**V.    COA 22—"Outrageous Government Conduct in Violation of the Due Process Clause of the United States Constitution"**

Finally, COA 22 contends that Defendants' conduct is "tantamount to outrageous government conduct in violation of the Due Process Clause of the United States Constitution." *Id.*

at 116.  This claim recalls Plaintiffs' "denial of liberty" claim at COA 5.  The Court recommended COA 5's dismissal because COA 5 was essentially duplicative of the procedural-due-process component of the more-appropriately-titled COA 9.  A similar issue recurs here.  References to "outrageous government conduct" seemingly refer to substantive-due-process doctrine, given that one requirement of a substantive-due-process claim is that the relevant conduct must be conscious-shocking.  *See Mitchell*, 959 F.3d at 898; *White*, 696 F.3d at 757–58.  But the Complaints here also present a more-specific due-process claim—COA 9—and Plaintiffs' substantive-due-process arguments have already been discussed there.  The Court therefore concludes that COA 22 is duplicative, so recommends its dismissal.

**VI.    Summary (and a Point Regarding County Employees)**

In summary, the discussion above strips the four actions here down significantly.  In each case, what remains (on this Court's recommendations) are § 1983 claims for prospective injunctive relief based on portions of COAs 2, 3, 7, 9, and 15.

Because what remains are § 1983 claims for injunctive relief, the Court makes one further recommendation.  Each Complaint includes one Defendant that is a county official instead of a state official.  *See Bishop* Docket No. 1 at 1 (naming "Olmsted County Social Services John Doe"); *Goodwin* Docket No. 1 at 1 (naming "Clearwater County Social Services Sandy Nelson"); *McRae* Docket No. 1 at 1 (naming "Hennepin County Social Services James O'Keefe"); *Mosby* Docket No. 1 at 1 (same).  With the Complaints now limited to constitutional-law claims about MSOP policies and conditions, the Court recommends dismissing these county Defendants from these matters entirely.  There is simply no reason to expect that such Defendants are in any position to provide prospective injunctive relief addressing MSOP policies and conditions; such policies and conditions are a matter of Minnesota state control, not subjects under counties' control.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1.    The following motions are **GRANTED**:

    a.    In *Bishop v. Swanson*, No. 12-CV-135 (D. Minn.): Plaintiff Merel Evans Bishop's "Motion for Leave to Proceed In Forma Pauperis," *Bishop* Docket No. 2.

    b.    In *Goodwin v. Swanson*, No. 12-CV-180 (D. Minn.): Plaintiff Joseph Goodwin's (a) "Request That The Court Not Dismiss The Action pursuant to Fed. R. Civ. P. 41(b) For Failure to Prosecute," *Goodwin* Docket No. 15; and (b) "Motion for Leave to Proceed In Forma Pauperis," *Goodwin* Docket No. 2.

    c.    In *McRae v. Swanson*, No. 12-CV-221 (D. Minn.): Plaintiff William McRae's (a) "Request That The Court Not Dismiss The Action pursuant to Fed. R. Civ. P. 41(b) For Failure to Prosecute," *McRae* Docket No. 17; and (b) "Motion for Leave to Proceed In Forma Pauperis," *McRae* Docket No. 2.

    d.    In *Mosby v. Swanson*, No. 12-CV-320 (D. Minn.): Plaintiff William Mosby's "Motion for Leave to Proceed In Forma Pauperis," *Mosby* Docket No. 3.

2.    For each matter addressed herein, the Court directs the U.S. Marshals Service to effect service of process on Defendants (save the Defendants noted in Paragraph 3 below). These Defendants are to be served in their official capacities with the State of Minnesota, consistent with Rule 4(j) of the Federal Rules of Civil Procedure.

3.    Unless otherwise noted by the Court, service shall not be made on the following Defendants:

    a.    In *Bishop v. Swanson*, No. 12-CV-135 (D. Minn.), "Olmsted County Social Services John Doe."

    b.    In *Goodwin v. Swanson*, No. 12-CV-180 (D. Minn.), "Clearwater County Social Services Sandy Nelson."

    c.    In *McRae v. Swanson*, No. 12-CV-221 (D. Minn.), and *Mosby v. Swanson*, No. 12-CV-320 (D. Minn.), "Hennepin County Social Services James O'Keefe."

4.    Following service of process, Defendants must answer or otherwise respond to the complaints within 35 days of the date when the Court's pending Report and

Recommendation is resolved. Whether Defendants answer or respond in some other fashion, Defendants are ordered to provide—as part of their initial answers or responses—their views as to how claim preclusion (or related doctrines) affects what claims remain in these actions.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1.    The Complaints be **DISMISSED** (for lack of jurisdiction) to the extent that they assert official-capacity § 1983 claims seeking damages against employees of the State of Minnesota.

2.    The Complaints be **DISMISSED** (for failure to state a claim) to the extent that they assert individual-capacity § 1983 claims seeking damages against employees of the State of Minnesota.

3.    The Complaints be **DISMISSED** to the extent that they purport to bring claims under the Minnesota Constitution.

4.    The remainder of the following causes of action be **DISMISSED**:

   a.    COA 1 (failure to provide treatment).

   b.    COA 2 (unreasonable searches and seizures), *except for* Plaintiffs' claims that MSOP policies are causing (1) impermissible monitoring of Plaintiffs' calls with their attorneys, and (2) actual property losses.

   c.    COA 3 (invasion of privacy), *except for* Plaintiffs' claims that MSOP policies are causing impermissible monitoring of Plaintiffs' calls with their attorneys.

   d.    COA 4 (denial of access to legal materials and counsel).

   e.    COA 5 (denial of liberty).

   f.    COA 6 (denial of less restrictive alternative).

   g.    COA 7 (cruel and unusual punishment), to the extent that it raises policies and conditions already addressed in the *Karsjens* litigation.

   h.    COA 8 (double jeopardy).

i.   COA 9 (due process), to the extent that it raises (i) procedural-due-process claims concerning policies and conditions already addressed in the *Karsjens* litigation, or (ii) substantive-due-process claims.

j.   COA 10 (conspiracy to deny due process).

k.   COA 11 (intentional infliction of emotional distress).

l.   COA 12 (negligent infliction of emotional distress).

m.   COA 13 (violation of the U.S. Constitution's Contracts Clause).

n.   COA 14 (negligent hiring and credentialing).

o.   COA 16 (supervisor liability).

p.   COA 17 (violation of police powers).

q.   COA 18 (violation of oath of office)

r.   COA 19 (support for preventative detention).

s.   COA 20 (violations of rights to health care and affordable housing).

t.   COA 21 (conspiracy to place Plaintiffs "outside of the law").

u.   COA 22 (outrageous government conduct).

5.   The following Defendants be **DISMISSED** from these actions:

a.   In *Bishop v. Swanson*, No. 12-CV-135 (D. Minn.), "Olmsted County Social Services John Doe."

b.   In *Goodwin v. Swanson*, No. 12-CV-180 (D. Minn.), "Clearwater County Social Services Sandy Nelson."

a.   In *McRae v. Swanson*, No. 12-CV-221 (D. Minn.), and *Mosby v. Swanson*, No. 12-CV-320 (D. Minn.), "Hennepin County Social Services James O'Keefe."


Dated: January 24, 2023                    ___s/David T. Schultz____
                                           DAVID T. SCHULTZ
                                           U.S. Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).